The next case is Zury Lorenzo v. U.S. Attorney General. Mr. Roman is here for the petitioner. Mr. Hurley is here for the respondent. And this is Ms. Roman. And you're ready. Good morning, Your Honors. If it may please the Court, my name is Laura Roman. I'm here on behalf of the appellant Zury Alvizuriz-Lorenzo. We are here today for two reasons, Your Honor. First, to determine whether the particular social group consisting of either girls or young women in Guatemala who cannot leave their family as a result of their age or economic conditions are recognizable particular social groups, under the de novo review standard. Second, we're here to determine whether substantial evidence supports the finding that the groups proposed by Zury are not socially distinct. I'd like to take a look at very quickly the Board and the IJ's decision with respect to this case, recognizing that the Attorney General issued a decision in AB which I'll get to. The Board and the IJ found that the sexual and physical abuse and threats that Zury had experienced in Guatemala at the hands of her grandfather and the father and the husband's cousins rose to the level of past persecution. However, the Board upheld the IJ's determination that Zury had not shown that she was persecuted on account of a cognizable particular social group. The Board agreed without any analysis whatsoever with the immigration judge that Zury's proposed social groups are not analogous to the groups found cognizable in the matter of ARCG, namely whether married women in Guatemala are unable to leave their relationship. Can I ask you just a quick question? Sure. ARCG, AB, the District of Columbia, its own appeal in the D.C. Circuit. Do we need to, given the limbo status of all of that, do we need to get into that? I mean, it seems to me that that is really sort of about persecution, not so much about distinctness of social group. Can we just decide the distinctness of social group without wrestling with ARCG and AB? Absolutely, Your Honor. All we have to do is move forward with the standard already articulated by this Court in Rodriguez and also the standards articulated by the other cases in WG and ARG and SEG and all the other cases that the Board has issued that particular standard. And remember that in AB, the whole thing was simply to overrule matter of ARCG, but it didn't set forward any new law, any new standards. It was only a case where the case was overruled because the Board did not conduct a separate and individual case-by-case analysis, and that's the reason the case was overturned. But the AB actually affirmed the framework and the legal standards set forth in all the other cases that the Board had articulated particularity, social distinction, and immutable characteristic. Most of what AB said was rhetoric. It was dicta. It wasn't new law. It wasn't applicable to anything new. And to the extent that the Attorney General is trying to tell the Board and judges what to do, it's impermissible. He can't do that unless the cases are referred to himself. So it's okay by you if we just say forget about ARCG and AB and the DDC and the district and the D.C. Circuit. We'll just decide this on our own precedent about distinctiveness of social justice. If the law doesn't change, Your Honor, it's just the application of the facts to the law that are changing from case to case. But the law continues to be the same, and I would encourage the Court to use its own independent analysis and apply the standard the way it is written under Rodriguez and the other cases from the Board. If I may continue. So I guess I might change my outline. Sorry about that. That's okay. I think it's important to note a few things that the dissent said because I really like the dissent's perspective on this case, and I thought they did a really nice job with the analysis on this case. And remember that the Board and either the Board or the immigration judge went through a full detail analysis as to the elements and the factors that it needs to consider. The dissent did. In the dissent, Linda Whitland stated that in the matter of ARCG, the Board never stated that a spousal or long-term relationship is necessary to establish a particular social distinct group under the Act. I think that's critical because both the immigration judge and the Board claim, well, if it's not exactly the same kind of relationship that you see in ARCG, there's no way that asylum could be provided or should be granted. And that's not the case. You really have to do an independent analysis and take a look at the individual elements to see whether protection should be afforded in the particular case. Also, with respect to the social distinct and the detailed analysis, the dissent held that the groups are particularly defined since the familial domestic relationship that members of the appellant's group share with their abusers is analogous to the marital relationship deemed immutable in the matter of ARCG. But immutability is really not so much on the table, right? No, I don't think so, Your Honor, but it is analogous to that relationship. Having a child and having that parent-child relationship is no different, in my opinion, as a husband-and-wife relationship. We're talking about inter-family relationships here, and the victim is being abused by that particular abuser, whether it's a child, whether it's a niece, whether it's a husband and wife. Why would that matter in the analysis as to whether or not there's a relationship, a relationship that the child, the person, and the wife are unable to leave because of the norms in their society or because, in this case, her age? But so I guess without reference to sort of an analogous marital relationship, how is it under existing precedent that this group, young girls who can't leave their families, are, as I guess courts have said, set apart, distinct, recognizable? They have visible characteristics. How does that actually work? I mean, it just strikes me that we're talking about half of the population or something, right? I mean— Well, that's true, Your Honor, but there's case law— well, there's country conditions report that specifically addressed the fact that these children are suffering. They're victims. They have laws out there that recognize them. These are children that are from Guatemala who are young, who because of their age are unable to leave. These are all limiting factors in this particular case, and it's socially distinguishable. You can tell because there are cases, there are laws, there are criminal acts that prevent this abuse from happening. So they are socially distinct. Otherwise, they wouldn't have any laws or any cases that would prevent it. And it's not that this is going to open the floodgates and allow all these cases to come in because most of the time these children are not able to come across. They're not able to dictate and state what their social harm is, and they're very often not able to leave their families because of their age, because of their economic conditions. So I think this is going to have a very limiting effect just like with the domestic abuse cases. Not every woman that was abused was able to come into the United States and allege that she's entitled to asylum. She had to establish that she was from that particular country, that she was not able to leave because of the social norms, because it did not allow them to leave with ease. So if we want to say that it is a legally cognizable, distinct social group, if we want to say that, what do we cite? What do we rely upon? That the Guatemalan society views girls or young women in Guatemala who cannot leave their family as a result of their age or economic conditions, if we want to say that that's recognized as a distinct social group within Guatemalan society, what do we point to? Well, Your Honor, if you look at the dissent's decision, we do have exhibits in the record at Court Exhibit 9, 10, and 12A that address exactly that issue and go through and explain why is it that these children and young women aren't able to get the protections. What are those exhibits? Exhibits 9, 10, and 12A. What are those exhibits? Those are country condition reports and different articles from authors that have written about Guatemala and the crimes involving children. And what did the BIA majority opinion say about those exhibits? Well, Your Honor, I think the key is to determine whether society offers legal protections to domestic violence victims. And I think that demonstrates that a society views the victims as a group. The cases actually have said that when that's the case, that when expert reports like the expert reports we have here in Guatemala and the laws, the Guatemalan laws and the social norms and the practices, as well as in this case, Sui's personal experiences, demonstrate that the rationale behind ARCG's holding also applies to young girls whose societies turn a blind eye to the severe abuse based on the notion that they are subordinate to or subordinate within their family. So I think that the fact that we have reports here that establish that the groups of Guatemalan girls and also young women cannot leave their family shows that it is a socially distinct case, primarily because of the age and the economic conditions. You know, a 10-year-old, can I just get up and leave their house when their grandfather or their father is abusing them and sexually abusing them? So there are laws out there that recognize this is an issue, that this is a problem. There are laws that were passed to actually address this, but they're not being enforced. Nine out of ten cases don't even go to prosecution. They don't find individuals responsible for their actions. So if not here, where are these children going to be able to get these protections when they can't get it in their countries? So just a question. So we've got this case called Castillo Arias versus the Attorney General that says, persecutory action toward a group may be relevant action in determining the visibility of a group in a particular society. The social group was not meant to be a catch-all and cannot be defined exclusively by the fact that the group is targeted for persecution. And it sounds like in response to Judge Wilson's question about sort of what do we cite, you said country conditions reports suggesting that women and children are at risk, subject to abuse. But what do you do with a case like Castillo Arias that seems to say that might be relevant, but it can't be all you cite to us? Well, Your Honor, we're not just citing to that. We're not just claiming that this case, they're targeted because of their persecution. I mean, part of the reason that this young girl was targeted was because of her age, because she was female, because she was a minor, because she was 9 years old, 10, all the way through to she was 21 years old. So this is not a case where we're defining the particular social group based on persecution. It's based on the immutable characteristics that involve gender, that involve age, that involve her inability to leave her country, and much of the board's cases have found that those are immutable characteristics. Now you add to that that there's country condition reports that show that they're not being protected, that they are identified as a group that requires protection, but they're not being forced. The laws are not being forced. They're not being protected. What else can they do but endure this abuse for another 20 years? Oh, I think I'm over, Your Honor. Sorry. All right. We have your argument. Thank you, Ms. Roman. Mr. Hurley. May it please the Court. My name is James Hurley, and I represent the Attorney General. The Court should deny the petition for review for two reasons. First, substantial evidence supports the agency's determination that Ms. Alvarez Lorenzo's proposed social group of girls or young women in Guatemala who cannot leave their family because of their age or economic condition lacked the necessary social distinction in Guatemalan society. And second, even under the relaxed standard of the now overruled matter of ARCG, Alvarez Lorenzo did not qualify for relief. So if you take ARCG as a given or even the logic of ARCG, what's the big difference between married women and young girls in terms of social distinctiveness? What's the difference? Well, again, this is kind of what the Attorney General was getting to in AB, how they overruled AB. So I don't think that the government feels that this case shouldn't be ruled. You shouldn't analyze this case under ARCG. But just look at the fact that that was the law at the point when the immigration judge made her decision and the board decided this case and just compared the facts of ARCG to this case and said that it wasn't analogous. But before you leave that now, it's clear that Grace versus Whitaker in the District of Columbia District Court enjoined AB as arbitrary and capricious, right? Actually, I can't answer that. I think that's a yes. And I think the appeal is pending in the D.C. Circuit. Yes. Again, what we would argue would be, though, that what's contained in AB would be what you should decide this case on. And that decided it under MEVG. But a federal district court, what Judge Wilson is saying, is a federal district court enjoined AB. Correct. And so AB is no good. And that has not been finally resolved. The D.C. Circuit's got the case but hasn't said anything about it. That's true. How can we decide the case based on AB? Well, you can't decide. Again, and you wouldn't do that because the agency didn't decide this case on AB. So AB, for the purposes of this case, is you wouldn't decide on the matter of AB because you'd get into a Chenery violation there because the agency didn't decide it. But if you looked at AB, they discussed, they relied on WGR in matter of MEVG and what you need to rely on to qualify for asylum, which is the immutability, the particularity, and social distinction. So that's, in AB, that's what you would decide this case, and the government would prevail just based on the analysis. Yeah, I mean, so it seems like the best answer that you have is forget about ARCG and AB and the District of Columbia and the D.C. Circuit and forget about it. Just go back to like pre-all-that-stuff precedent, and how do you decide social distinctness? And this is how you do it, and this doesn't qualify. Exactly. But you can't get away, and I completely, the government agrees with that, but you wouldn't, you need to go back to WGR and MEVG. And that would, the government would prevail on that point. And it's kind of a tricky analysis in this case because the petitioner's claim was based almost entirely on ARCG. And when she talked about the dissent in this case, that was like merely an extrapolation of matter of ARCG to this case. But the government would prevail in this case because there was no social distinction in the case or in the proposed social group that she talked about. And what about her reliance on the country conditions reports that say that young girls are at risk? There are laws against child abuse that have been recognized, sort of children of familial units have been recognized as a group that needs protection. Well, again, that is a law that is generally applicable to people across the whole country. So it's not, you get into problems with the distinction there because it's a law of general application. And then if you go a step further in the asylum analysis that's contained in MEVG too, in order to qualify for asylum, you still have, you have to prove that the government is unwilling or unable to protect this group or this particular social group. And a law that's passed to protect these folks would immediately cut against. But haven't you, so maybe I'm wrong about this, but I thought the bit about the government can't protect them, that would run to persecution or the threat of future persecution. And you guys have said that, well, give her that one. We're talking about the distinctness of the social group. So how does the government's, there are laws on the books, how does the government's failure to enforce those laws affect the distinctness of the social group? I may just be missing something. No, you're correct on that. But again, that goes to the entire analysis where persecution, it happened in this case, but again, it was decided when the ARCG was in effect. But you're not doubling back, are you, on your earlier acknowledgement that she gets past persecution or the threat of future persecution? No, the immigration judge on the board said that she had persecution. But again, the ARCG that was in effect at the time kind of muddied the waters as far as the analysis. That decision was based on concessions by the DHS in that case, that persecution had happened on account of a particular ground. So this case was decided under the lens of a matter of ARCG. And so the government argues that it would prevail because it's not socially distinct. Even with this law of general applicability, there wasn't any evidence that Guatemalan society recognized this specific girls or young women in Guatemala who cannot leave their family because of their age or economic conditions, recognized them as socially distinct. Which standard of review are we really traveling under here? I got to confess, I'm sort of genuinely confused about this because there's like a de novo standard that applies to sort of social distinction generally. And then a substantial evidence standard that applies, I guess, if the board has made sort of subsidiary factual findings about this class. Exactly. So where are we? As this court has said, the ultimate question of whether or not a group constitutes a particular social group is a question of law. But if you go to a matter of MEVG, they talk about how the analysis under that is an evidence-based analysis where you look at the facts of the case to see whether or not they prove that it was socially distinct or whether it was particular or immutable. So the overarching, it's de novo, but it's not like this court is like an immigration court and you look at the facts of the case and decide. You have to look at what the agency decided and what's in the record. So you think here the BIA made an evidence-based determination that this particular social group is not sufficiently distinct. Correct. And that we're reviewing that for substantial evidence. Correct. But the ultimate decision is a de novo, but you have to look at these subsidiary factual determinations that are based on the record and on the evidence that's presented. And then there are a few other points I'd like to mention, too. The issue of humanitarian asylum. If she doesn't prove that her group has social distinction, it doesn't count as a particular social group, so the humanitarian asylum claim necessarily fails. This wasn't in the brief, but I can provide a 28-J. decision in this case that Perez-Zentino on 413F3rd out of 1311 Note 3 makes that point where it still has to be a cognizable social group in order to account for humanitarian asylum. The petitioner waived her religious persecution claim in CAT by not mentioning it in the brief. And if there are no further questions. She was denied asylum. She hasn't committed a crime, right? She's not. I think the facts of this case are she was picked up the same day that she arrived. She was on a bus going to Florida. So she hasn't been convicted of any crimes. All right. Thank you. For the foregone reasons and for the reasons set forth in the government's brief, this court should deny the petition for review. I must confess that I, too, have struggled with the social distinct criteria. I don't think it's very straightforward. And very often it depends on on the particular evidence that has been included. And I would ask that you look at all the evidence that we included in here, all the reports. And also, I don't think we can ignore the ARCG because it did go through the analysis of looking at what Guatemala was doing in the reports. And as you mentioned, in Grace versus Whittaker, that case is actually in limbo right now. And the judge has enjoined much of his force. And I think it's interesting because when you look at what the attorney general did, he went through all this rhetoric and finally concludes. And domestic violence claims, again, in dicta are foreclosed and that they shouldn't be awarded and they shouldn't be granted. But essentially what he's doing is telling all the judges and the officers to just comply with what he says and do what he says and not to conduct their own analysis. And that's precisely the reason that he overruled the man of ARCG because they didn't conduct their own analysis. They didn't consider the facts of the case. But that's what he's asking all the immigration judges and the officers to do. Listen, you know, if it's domestic violence, you can't grant asylum, period. Do you agree with the government's assessment of how we assess standard review? I think once you have all the different criteria, the social distinction, the particular immutable characteristics that you look at on a substantial evidence, then you decide whether this meets the particular social group under a de novo standard. So you have to apply the de novo standard. And that's what the board did in this case. They applied the de novo standard in determining whether there was a recognizable particular social group. Now, they did it without much analysis, but that's what, in fact, they did. And they just bought into what the immigration judge said, that in this case, they're not analogous. And I don't think that's how cases should be addressed, how they should be decided. If they don't fit exactly into this little square box, you can't do any further analysis. I think you've got to apply the facts. And determine whether in this case, for example, the law requires us to find that there was, in fact, recognizable particular social groups. And in addition, I believe that there is a recognizable particular social group. I think the law, all the reports that were submitted, the dissent's decision and his analysis all show that in this case, there's a recognizable particular social group. And rather than to remand the case back to the immigration judge to decide whether, in her discretion, she should grant asylum, I think humanitarian asylum is required. We could do it. You could do it. I mean, there's this case. In the case of Abra versus Gonzales, a matter of LFs, there the court decided that the persecution, it was past persecution based on a protected social group. I agree with the government in that regard. But once you determine that's the case, that there is past persecution based on a recognizable particular social group, you can approve humanitarian asylum based on the facts of the case. You don't have to return it or remand it to the immigration judge to decide whether, in her discretion, she should grant it. And I think because of the egregious factors here. What's the name of that case? It's a matter of LFs at 712. Sorry, I don't have the full site. But a matter of LFs and also Abra, A-B-R-H-A versus Gonzales is an Eighth Circuit decision at 433 F. 3rd, 1072. Is it cited in your brief? I'm sorry? Is it cited in your brief? I do not recall, Your Honor. I hope so. I do not recall. But essentially, it explained that past persecution in that case was so severe that deportation would be inhumane. And rather than to send it back and remand it, they just granted humanitarian asylum. I don't know if you have any questions. Thank you very much for your patience. Thank you. Court is in recess until 9 o'clock tomorrow morning. All rise. Thank you.